UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHIRAH HERBERT, individually and on behalf of D.H., a minor child | CIVIL ACTION |
| VERSUS | NO. 25-758 |
| ST. JAMES PARISH SCHOOL BOARD | SECTION M (4) |

## ORDER & REASONS

Before the Court is a motion for preliminary injunction filed by plaintiff Shirah Herbert, individually and on behalf of D.H., a minor child, seeking enforcement (reinstatement) of a "stay put" order issued by a Louisiana administrative law judge ("ALJ") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j).[1] Defendant the St. James Parish School Board (the "School Board") responds in opposition,[2] and Herbert replies in further support of her motion.[3] A preliminary injunction hearing was held on May 19, 2025.[4] At the hearing, Herbert did not submit any additional evidence, choosing instead to rely on the administrative record and an affidavit she submitted in support of her preliminary injunction motion.[5] The School Board submitted the district's school-year calendar as additional evidence, which shows that the last day of the regular school year was May 22, 2025.[6] Also, the Court permitted the parties to file post-hearing briefs.[7] Having considered the parties' memoranda, the arguments made at the preliminary

---

[1] R. Doc. 2.
[2] R. Doc. 20.
[3] R. Doc. 21.
[4] R. Doc. 22.
[5] R. Docs. 29 (administrative record); 2-2 (affidavit).
[6] R. Doc. 22-1 (calendar). The School Board stated that it offers extended school year services, *i.e.*, summer school, to eligible students, but made no representations as to whether D.H. would qualify if he were enrolled at one of its schools.
[7] R. Docs. 23; 24.

injunction hearing, the record (including the administrative record), and the applicable law, the Court denies Herbert's preliminary injunction motion.

I.     **BACKGROUND**

This case concerns a preschool-aged child, who is eligible for special education services, but was enrolled in the school district of a parish in which he and his parents did not reside and was disenrolled when the school discovered the residency issue. The story begins in August 2024 when Herbert, who resides in St. John the Baptist Parish ("St. John"), decided to enroll her son D.H. in school in neighboring St. James Parish ("St. James"). To accomplish the enrollment, Herbert completed an application packet that referenced in some places her St. John address, but listed an address in St. James for D.H.[8] Herbert stated that D.H. resided in St. James due to Herbert's "work arrangements."[9] The application also required proof of residency for which Herbert, who did not own a home in St. James, provided a signed, sworn affidavit stating that both she and D.H. lived with someone named A.T. in St. James.[10] Despite the address discrepancies, the School Board, relying solely on Herbert's sworn affidavit as proof of residency, enrolled D.H. in the pre-kindergarten program at Cypress Grove Montessori Academy ("CGMA").[11]

On October 22, 2024, CGMA identified D.H. as being eligible for special education services due to behavioral issues and developmental delays.[12] While preparing for D.H.'s initial individualized education program ("IEP") meeting, the principal of CGMA became aware that D.H. might not live in St. James, as Herbert had represented in her sworn affidavit.[13] The principal

---

[8] R. Docs. 1-2, Testimony of Amy Laiche; 29 at 125-52 (School Board ex. 1). Record Document 1-2 is the audio recording of the hearing to determine D.H.'s residence that was held before the ALJ on January 16, 2025. The exhibit referenced (*i.e.,* the application packet) was offered by the School Board at that hearing and is part of the administrative record.
[9] R. Doc. 29 at 139.
[10] R. Docs. 1-2, Testimony of Laiche; 29 at 138-39.
[11] R. Doc. 1-2, Testimony of Laiche.
[12] R. Doc. 1 at 1-2.
[13] R. Doc. 1-2, Testimony of Laiche.

informed Amy Laiche, the School Board's chief of schools and student support, of this residency issue.[14] At some point thereafter, Laiche, who was at CGMA for an unrelated matter, saw A.T. at the school and witnessed an impromptu interaction between A.T. and D.H.[15] It was clear to Laiche that A.T. was familiar with D.H., so she asked A.T. about D.H.[16] A.T. informed Laiche that D.H. went to her daycare the prior school year (2023-2024), but stated that he did not reside with her during the then-current school year (2024-2025).[17] Laiche did not ask A.T. about the affidavit in Herbert's enrollment application packet because the meeting was "not planned" and "off the cuff," but Laiche saw it as an opportunity to confirm whether D.H. resided with A.T. in St. James.[18] Laiche also investigated D.H.'s residency by looking to see if Herbert owned property in another parish, and she found that Herbert owned property in St. John.[19] Then Laiche spoke with the principal of CGMA and they agreed that Laiche would call Herbert to ask about her residency.[20] On November 1, 2024, Laiche called Herbert, and Herbert confirmed that she resided in St. John, but maintained that D.H. resided in St. James.[21] Laiche explained to Herbert that the School Board's policy, which is grounded in Louisiana law, requires that both the parent and the student live within the geographical boundaries of St. James, and that, because Herbert lived in St. John, D.H. would be disenrolled from CGMA effective November 4, 2024.[22] Laiche also explained to Herbert that D.H. should be enrolled in school in St. John, where Herbert resided.[23] Also on

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* Laiche explained further that the policy contained certain exceptions from this requirement but none applied to Herbert and D.H.'s case. *Id.*
[23] *Id.*

3

November 1, 2024, Laiche sent an email to Herbert that memorialized their telephone conversation.[24]

On November 27, 2024, the Louisiana Department of Education received a written request for a due process hearing from Herbert's counsel, alleging that the School Board denied D.H. a free appropriate public education ("FAPE") by: "(1) failing to conduct a thorough investigation or provide [Herbert] with sufficient notice of her rights to appeal [the] School [Board's] residency determination that [D.H. was] not a resident in [the] School [Board's] geographical area; and (2) refusing and failing to convene an [IEP] team meeting or implement any services after finding [D.H.] eligible for special education services."[25] Herbert also requested an independent educational evaluation at public expense and a stay-put order under the IDEA.[26]

On December 6, 2024, Senecca Boudreaux, the School Board's director of special education, wrote to Herbert to respond to her request for a due process hearing.[27] Boudreaux explained that, under the IDEA and Louisiana state law, a school district is not required to provide a FAPE to a student who does not reside within the district.[28] She further explained that it would be futile for the School Board to conduct an IEP meeting when any resulting IEP would have to be reviewed and possibly changed when D.H. was enrolled in the correct school district, St. John.[29] Boudreaux also confirmed to Herbert that the School Board remained willing to provide special education services to D.H. if she and he were to move to St. James and legitimately enroll in the district.[30]

---

[24] *Id.*; R. Doc. 29 at 154.
[25] R. Doc. 1-1 at 1.
[26] *Id.*
[27] R. Docs. 1-2, Testimony of Senecca Boudreaux; 29 at 160-63 (Boudreaux's letter).
[28] R. Doc. 29 at 160-63.
[29] *Id.*
[30] *Id.*

On January 13, 2025, the ALJ issued the IDEA stay-put order, allowing D.H. to remain at CGMA during the pendency of the due process proceedings.[31] The ALJ reasoned that, because no IEP was in place, CGMA could be considered D.H.'s "then-current educational placement."[32] In the meantime, on December 12, 2024, the School Board had filed a preemptory exception of lack of subject-matter jurisdiction, arguing that it did not owe D.H. a FAPE because he did not meet the residency requirements.[33] Herbert opposed the exception.[34]

On January 16, 2025, the ALJ held an evidentiary hearing on the limited issue of D.H.'s residency.[35] Laiche testified as to the series of events that led to D.H.'s enrollment and then his disenrollment after the School Board confirmed that he did not meet the residency requirements.[36] Laiche also testified that the disenrollment, which occurred after she verified that Herbert resided in St. John, was in compliance with the School Board's policy.[37] Further, Laiche stated that when she initially reviewed the entire enrollment application packet in August 2024, she did not note the St. John address listed for Herbert, but instead relied solely on Herbert's sworn affidavit for proof of residency.[38] Laiche did not know why the superintendent did not sign D.H.'s enrollment application packet.[39] Further, Laiche indicated that she did not request more information from Herbert about residency because Herbert admitted to Laiche that she in fact lived in St. John, not St. James.[40] Laiche confirmed that the School Board's residency policy applies to both disabled and non-disabled students.[41]

---

[31] R. Doc. 21-1.
[32] *Id.* at 2-4.
[33] R. Doc. 1-1 at 1.
[34] *Id.*
[35] R. Doc. 1-2.
[36] *Id.*, Testimony of Laiche.
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*

5

Kelly Cook, the School Board's chief of human resources and risk management, who is also an attorney, testified that D.H. was properly disenrolled according to the School Board's policy when it was confirmed with "actual proof" that Herbert resided in St. John.[42] Cook stated that she learned about the residency issue in late fall 2024, probably around November.[43] Cook testified that D.H. was initially admitted to CGMA due to a "clerical error" in that the School Board failed to catch the St. John address listed for Herbert in the enrollment application packet, but that a valid residency concern was triggered when the School Board gained actual knowledge that D.H. did not meet the School Board's residency requirements.[44] Cook recalled that CGMA became aware of the residency issue when, in preparing for the initial IEP meeting, the IEP team requested D.H.'s medical records from his doctor, but the doctor's office refused to provide the records because the St. James address listed in CGMA's request did not match the St. John address the doctor's office had on file for D.H.[45] Cook stated that the School Board does not have its own process to challenge a residency decision.[46]

Herbert testified that she answered the questions on the enrollment application packet truthfully – specifically, that she resided in St. John, while D.H. resided in St. James due to her work schedule.[47] She also testified that she was married to D.H.'s father, D.H. was not in foster care, and neither she nor her husband had relinquished custody of D.H.[48] At the time of D.H.'s disenrollment, Herbert resided in St. John.[49]

---

[42] *Id.*, Testimony of Kelly Cook.
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*, Testimony of Shirah Herbert.
[48] *Id.*
[49] *Id.*

6

At the close of the administrative hearing, Herbert's attorney argued that, regardless of D.H. and Herbert's actual residency, D.H. should be deemed a resident of St. James because Herbert answered the questions on the enrollment application packet honestly and the School Board admitted him to CGMA, without the superintendent's signature, even though Herbert had disclosed an address in St. John.[50] She reasoned that, once CGMA evaluated D.H. and determined that he was eligible for special education services, he was thereby qualified as a resident of the district and the School Board should have given Herbert an opportunity to cure any residency deficiencies before disenrolling D.H.[51]

In opposition, the School Board's attorney argued that the district's evaluation of a student for special education services, the lack of parental ill intent, and clerical errors do not make that student a resident of the district – a prerequisite to the rights Herbert seeks to enforce.[52] Instead, Louisiana law provides that a school district owes a FAPE to a student only when the student's parents reside within its geographical boundaries, and Herbert, admittedly, does not reside in St. James.[53] Once the School Board had proof that Herbert resided outside of the district, D.H. was disenrolled in accordance with its policy and state law, a decision which had nothing to do with the determination that he was eligible for special education services.[54] Further, argued the School Board, D.H. can receive special education services in St. John, where Herbert admits she resides.[55]

Just before closing the hearing, the ALJ stated that she could not rule on any other issues in the case until the residency issue was resolved, because it was the "driver of the case."[56] On January 31, 2025, the ALJ issued an order on D.H.'s residency, finding that D.H. was not a resident

---

[50] *Id.*, Argument of Kimona Hogan.
[51] *Id.*
[52] *Id.*, Argument of Wayne T. Stewart.
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*, ALJ statement.

of St. James, and thus the School Board did not owe him a FAPE.[57] She cited the IDEA and Louisiana law, which both specify that a school district owes "a duty to provide a FAPE to every student with exceptionality residing within [its] geographical boundaries."[58] And, noted the ALJ, "Louisiana [l]aw also provides that the residence of a student is the residen[ce] of the student's parent or parents."[59] Herbert admitted upon the ALJ's questioning that she resided in St. John.[60] Thus, D.H.'s residence for purposes of the IDEA was in St. John – meaning that St. John, not St. James (*i.e.*, the School Board), owed D.H. the duty to provide a FAPE.[61] The ALJ considered "unpersuasive" Herbert's argument that D.H. should be deemed a resident of St. James simply because she did not try to mislead the district in completing the enrollment application packet and because the School Board did not catch the address discrepancy earlier.[62] For these reasons, the ALJ granted the School Board's exception of lack of subject-matter jurisdiction, dismissed Herbert's request for a due process hearing, and terminated the adjudication of the matter.[63]

On April 17, 2025, Herbert filed a complaint in this Court under the IDEA and Americans with Disabilities Act, seeking review of the ALJ's residency order, enforcement of the stay-put order, and implementation of an IEP for D.H.[64] Herbert filed a motion for temporary restraining order ("TRO") and preliminary injunction to enforce the ALJ's stay-put order.[65] This Court denied the TRO and set a briefing schedule and hearing date for the preliminary injunction motion.[66]

---

[57] R. Doc. 1-1.
[58] *Id.* at 3.
[59] *Id.*
[60] *Id.* at 4.
[61] *Id.*
[62] *Id.* at 4-5.
[63] *Id.* at 5.
[64] R. Doc. 1.
[65] R. Doc. 2.
[66] R. Doc. 5.

## II.    PENDING MOTION

Herbert seeks a preliminary injunction enforcing the ALJ's stay-put order.[67] She argues that the issuance of such an order is automatic under the IDEA when a party invokes a due process proceeding and that it must remain in force during the pendency of that proceeding.[68] Herbert further contends that the traditional preliminary injunction factors are not relevant, but if they were, she would be entitled to one because she is likely to succeed on the merits of her stay-put argument, D.H. is irreparably harmed by missing educational opportunities, and the balance of the equities and public interest favor putting D.H. back in CGMA.[69]

In opposition, the School Board argues that Herbert is not entitled to a stay-put injunction under the IDEA and, instead, must satisfy the traditional preliminary injunction requirements, which, it says, she cannot do.[70] First, the School Board asserts that Herbert is not entitled to a stay-put order under the IDEA because there is no pending due process proceeding, nor is there a "then-current educational placement" for D.H. within the meaning of § 1415(j)[71] As to the statutorily required "then-current educational placement," the School Board contends that the term refers to the program outlined in the student's IEP, and because D.H. does not have an IEP, there is no placement to maintain.[72] Similarly, the School Board argues that there is no pending due process proceeding because the ALJ granted its exception of lack of subject-matter jurisdiction, which terminated the proceeding and thus eliminated the previously-issued stay-put order.[73] The School Board further contends that Herbert cannot satisfy the traditional preliminary injunction requirements as she cannot prevail on the merits of her complaint due to the fact that D.H. does

---

[67] R. Doc. 2.
[68] R. Doc. 2-1 at 2-3.
[69] *Id.* at 3-6.
[70] R. Doc. 20 at 1-2.
[71] *Id.* at 2-7.
[72] *Id.* at 3-6.
[73] *Id.* at 6-7.

9

not meet the residency requirements for enrollment and, consequently, is not owed a FAPE by the School Board; any injury to D.H. resulted from Herbert's enrolling him in the wrong school district, not any act or omission of the School Board; and the balance of hardships and public interest both favor the School Board because it is not required to expend public resources to provide a FAPE to a student who is not a resident of the district.[74]

Herbert replies, arguing that the ALJ's stay-put order survives the dismissal of the due process proceeding because the School Board did not appeal the issuance of the stay-put order.[75] She also contends that CGMA should be considered D.H.'s "then-current educational placement" and this case counts as a continuation of the due process proceeding.[76] Further, Herbert reiterates her argument pertaining to the traditional preliminary injunction factors.[77]

In its post-hearing supplemental memorandum, the School Board, citing the IDEA and Louisiana law, reasserts its arguments that a residency determination is a prerequisite to the application of the IDEA – including any entitlement to a stay-put order.[78] In her own post-hearing supplemental memorandum, Herbert asserts that state-law residency requirements should yield to the IDEA's stay-put provision pursuant to the Supremacy Clause.[79]

### III.  ANALYSIS

#### A.  IDEA Stay-Put Order

The IDEA was enacted "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. §

---

[74] *Id.* at 7-13.
[75] R. Doc. 21 at 1-3, 5-7.
[76] *Id.* at 3-7.
[77] *Id.* at 7-8.
[78] R. Doc. 23 at 1-5.
[79] R. Doc. 24 at 1-5.

1400(d)(1)(A). The law also "ensure[s] that the rights of children with disabilities and parents of such children are protected." *Id.* § 1400(d)(1)(B). "[T]he federal government provides funds to the states and local agencies to … comply with [the IDEA's] requirements, both substantive and procedural." *Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297, 300 (4th Cir. 2003). "The primary substantive guarantee of IDEA is the provision of a [FAPE] to children with disabilities." *Id.* "State and local agencies provide FAPE by designing and implementing IEPs for disabled children." *Id.* An IEP "is a 'written statement' that identifies the child's particular educational needs, sets measurable goals for the child's progress, creates a plan for meeting those goals, and outlines the supplementary aids and services the child needs to meet those goals." *J.L. through S.L. v. Williamson Cnty. Bd. of Educ.*, 2024 WL 3634456, at *2 (6th Cir. Aug. 2, 2024) (citing 20 U.S.C. §§ 1414(d)(1)(A), (B)). An IEP is developed by a team that includes parents, teachers, and school officials who consider "the child's strengths, the parents' concerns, the results of the child's initial or most recent evaluation, and the child's academic, developmental, and functional needs." *Id.* (citing 20 U.S.C. §§ 1414(d)(3)(A)). "The written IEP specifies the program of benefits to which the student is entitled in order to receive a FAPE." *White ex rel. White v. Ascension Par. Sch. Bd.*, 343 F.3d 373, 378 (5th Cir. 2003).

The IDEA implements several procedural guarantees. Included among them is a parent's right to convene "an impartial due process hearing," if he or she disagrees "with the IEP proposed by the state or local authority." *Wagner*, 335 F.3d at 300; *see also J.L. through S.L.*, 2024 WL 3634456, at *2 (citing 20 U.S.C. § 1415(f)(1)(A)). Then, "[i]f any of the parties to the due process hearing are aggrieved by the result of that hearing, the IDEA authorizes the institution of a civil action in federal court to challenge the 'findings and decision' made in the hearing." *Wagner*, 335 F.3d at 300 (citing 20 U.S.C. § 1415(i)(2)(A)). Because these procedures could take a significant

11

amount of time, Congress included in the IDEA a provision that allows a child to "stay put" in his or her educational placement during the pendency of the proceedings. *Id.* (citing 20 U.S.C. § 1415(j)). The so-called stay-put provision states that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child[.]" 20 U.S.C. § 1415(j). This "injunction is automatic; the party seeking it need not meet the usual requirements for obtaining preliminary injunctive relief." *Wagner*, 335 F.3d at 301; *see also Tina M. v. St. Tammany Par. Sch. Bd.*, 816 F.3d 57, 60 (5th Cir. 2016).

Because the IDEA's stay-put injunction is "automatic," a district court should ordinarily determine the child's then-current educational placement and enter an order maintaining the child in that placement during the pendency of the suit.[80] *Tina M.*, 816 F.3d at 60 (citing *Wagner*, 335 F.3d at 301). However, the ordinary scenario assumes that the prerequisites for the IDEA's application are met. One such requirement is residency. *See A.P. by E.F. v. Lower Merion Sch. Dist.*, 294 F. Supp. 3d 406, 410 (E.D. Pa. 2018) (stating that "when challenged, the residency of the disabled child is a threshold issue in the context of an IDEA claim" and that "the child's residence is a prerequisite to entitlement to FAPE provided by the school district"). As recognized by the Fifth Circuit, the IDEA requires local education agencies[81] to provide a FAPE to "'each disabled child *within its jurisdictional boundaries*.'" *Estate of Lance v. Lewisville Indep. Sch.*

---

[80] The parties dispute whether D.H. had a "then-current educational placement" at the time of his disenrollment. The School Board maintains that he did not because he did not have an IEP. *See* R. Doc. 20 at 3-6. Herbert, on the other hand, argues that the lack of an IEP is irrelevant, and this Court should consider CGMA – the school in which D.H. was enrolled – to be his "then-current educational placement." *See* R. Doc. 21 at 4-5. The Court need not resolve this dispute because the IDEA is inapplicable given that D.H. is not a resident of the School Board's district, and thus the School Board does not owe him a FAPE.

[81] A "local education agency" is defined by federal law as "a public board of education or other public authority legally constituted within a State for either the administrative control or direction of … public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State[.]" 20 U.S.C. § 1401(19).

*Dist.*, 743 F.3d 982, 989 (5th Cir. 2014) (emphasis added) (quoting *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. by Barry F.*, 118 F.3d 245, 247 (5th Cir. 1997)); *see also* 34 C.F.R. § 300.201 (stating that the local education agency, in providing for the education of children with disabilities within its jurisdiction, must have policies, procedures, and programs that are consistent with state law). Stated differently, "[a] school district is required to provide FAPE only to qualified students who reside in the school district," and "[c]onversly, a school district has no obligation to provide FAPE to ineligible non-residents." *A.P. by E.F.*, 294 F. Supp. 3d at 409-10; *see also K.K.-M. v. Gloucester City Bd. of Educ.*, 2020 WL 5015485, at *3 (D.N.J. Aug. 25, 2020) (holding that the ALJ "was correct to find that school districts are not responsible for providing a FAPE to students who do not reside within their boundaries"). This is a logical conclusion, because "[o]therwise, parents would be free to place their child in any school district regardless of where they reside." *A.P. by E.F.*, 294 F. Supp. 3d at 410. Thus, whether a local education authority is responsible for providing a FAPE to a given child, which would entitle that child to IDEA protections as to that local education authority, is dependent upon the threshold determination of residency under the applicable state law. *R.F. v. Delano Union Sch. Dist.*, 2017 WL 633919, at *4 (E.D. Cal. Feb. 15, 2017); *see also A.P. by E.F.*, 294 F. Supp. 3d at 410 (observing that "[t]he IDEA does not address residency requirements or enrollment policies[, because r]esidency is a matter of state law"); *J.S. v. Shoreline Sch. Dist.*, 220 F. Supp. 2d 1175, 1191-92 (W.D. Wash. 2002) (finding that residency

"for the purposes of the IDEA is determined by state law").[82] Absent residency and the resulting application of the IDEA, with its protections, there is no right to an interim stay-put order.[83]

Accordingly, this Court must look to state law to determine which local education agency – St. James or St. John – has the responsibility to provide a FAPE to D.H. If it is not the School Board (St. James), D.H. is not entitled to IDEA protections from that entity. Louisiana law provides that state and local education agencies have the duty "to provide a [FAPE] in the least restrictive environment to every student with an exceptionality, ages three through twenty-one,

---

[82] Relying solely on the Supremacy Clause, Herbert argues that the IDEA's stay-put provision must be enforced regardless of D.H.'s residency because, as a federal law, it trumps Louisiana state-law residency requirements. R. Doc. 24 at 1-5. This argument is misguided. The Supremacy Clause states that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. The Supremacy Clause is not the source of any federal rights, but rather instructs courts not to give effect to state laws that conflict with federal laws. *Armstrong v. Exceptional Child Ctr., Inc.,* 575 U.S. 320, 324-25 (2015). Where there is no contradiction in state and federal law, though, "the States retain their sovereign prerogatives to regulate." *Zyla Life Scis., L.L.C. v. Wells Pharma of Hous., L.L.C.*, 134 F.4th 326, 328 (5th Cir. 2025). Here, there is no conflict between state and federal law. Rather, the federal law – the IDEA – leaves residency determinations to state law. The two work together, not in conflict.

[83] Herbert cites some cases for the proposition that an IDEA stay-put order should issue and remain in place while a residency dispute proceeds. *See* R. Doc. 24. However, none of the cases she cites stands for that proposition. In *Student M. Doe, by her parent, Ms. Doe v. Foster-Glocester Regional School Committee*, No. 23-044A, R.I. Dep't of Educ. (Oct. 11, 2023) (*see* R. Doc. 24-1), the Rhode Island Department of Education hearing officer determined that a stay-put order should issue, but residency was not the heart of the dispute. There, an IDEA-eligible student attended school in a single school district from pre-school through her junior year of high school, but she moved to another district in the middle of her junior year. By agreement, she was allowed to remain in her original school for the remainder of her junior year but was required to change to the other district for her senior year unless the school districts could work out an arrangement for tuition reimbursement to allow her to remain in her original school. The hearing officer thought a stay-put order was warranted to allow the school districts to reach an agreement. It was not a case where she was deliberately enrolled in the wrong school district. Next, Herbert cites *T.L. v. Brentwood Union School District*, 2013 WL 1209040 (Cal. App. Mar. 26, 2013), for the proposition that a stay-put order should issue because she exhausted her administrative remedies. In that case, the court held that IDEA eligibility is a function of state-law residency, and that the plaintiff there was required to follow the state administrative procedures for challenging a residency determination before seeking IDEA protections in court. *Id.* at *4. The case does not stand for the reverse proposition that, when residency is at issue, a plaintiff is automatically entitled to a stay-put order if the administrative procedures were followed. Third, Herbert cites *St. Tammany Parish School Board v. Louisiana*, 142 F.3d 776 (5th Cir 1998), for the idea that federal law takes precedence over conflicting state-funding rules or administrative procedures. That case concerned whether the local school board or the state department of education was responsible for paying for services rendered to a student in an out-of-state facility. It has nothing to do with the student's residency within the school district. Finally, Herbert cites *M.R. v. Ridley School District*, 744 F.3d 112 (3d Cir. 2014), for the idea that a stay-put order must be issued regardless of the merits of the IDEA case. But that case, too, did not involve a residency issue.

*who is a resident therein.*" La. R.S. 17:1941 (emphasis added).[84] The residency of a student with an exceptionality is "within the geographical boundaries of the local education agency *in which the student's parent or parents have their legal residence*, unless the parent or parents have relinquished custody of the student."[85] *Id.* 17:1942(B)(3)(a) (emphasis added). Here, Herbert readily admits that she resides in St. John, and that she has not relinquished custody of D.H. It follows, then, that D.H. is a resident of St. John under Louisiana law, and that St. John is the local education authority responsible for providing him with a FAPE – not the School Board in St. James. Herbert cites no authority for the proposition that the School Board is compelled to treat D.H. as a resident of St. James due to the factual circumstances surrounding his enrollment and subsequent identification as being eligible for special education.[86] Under state and federal law, the parent's residency is the key. Indeed, under the IDEA and state law, "[t]he obligation to provide a FAPE … is triggered by a child's residency in the [d]istrict – not the child's enrollment in a public school in the [d]istrict." *D.S. v. D.C.*, 699 F. Supp. 2d 229, 235 (D.D.C. 2010); *see also Brooks v. Cent. Dauphin Sch. Dist.*, 2011 WL 4433285, at *7-8 (M.D. Pa. Aug. 31, 2011) (finding that parent could not state a claim under the IDEA as a matter of law to force a school district to enroll her children when she resided with them in another district because "the IDEA only requires a school district to make a FAPE available to a child residing within its district"), *adopted*, 2011 WL 4433284 (M.D. Pa. Sept. 21, 2011). Because the School Board is not responsible for providing

---

[84] The School Board's policy is to like effect. *See* R. Doc. 1-2, Testimony of Laiche.
[85] Sections (B)(3)(b) and (c) address the residency of students whose parents are divorced or students in foster care. La. R.S. 17:1942(B)(3)(b), (c). Because D.H.'s parents are not divorced and he is not in foster care, these sections are inapplicable.
[86] This is especially true given the questionable accuracy of the parent's affidavit of residency supplied at enrollment.

D.H. with a FAPE, it does not owe him any IDEA protections, including any attendant right to a stay-put order.[87]

### B. Traditional Preliminary Injunction

If the analysis for a traditional preliminary injunction were applicable here, which is likely not so, Herbert fails to satisfy the elements required to obtain one. A movant seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant if the injunction is denied outweighs the potential harm to the nonmovant if the injunction is granted; and (4) that granting the injunction will not disserve the public interest. *Garcia v. Jones*, 910 F.3d 188, 190 (5th Cir. 2018). "A preliminary injunction is an extraordinary remedy which courts grant only if the movant has clearly carried the burden as to all four elements." *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003). A preliminary injunction "may only be awarded upon a clear showing that the [movant] is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008), and one is never awarded as a matter of right but only within the sound discretion of the district court. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1178 (5th Cir. 1989) ("The primary justification for granting a preliminary injunction is to preserve the court's ability

---

[87] Considering that the ALJ granted the School Board's exception of lack of subject-matter jurisdiction, and that Herbert cannot state a valid IDEA claim against the School Board, because D.H. is not a resident of its district (St. James), this Court seriously doubts that it has jurisdiction over this case.

to render a meaningful decision on the merits."). Ultimately, granting a preliminary injunction "is to be treated as the exception rather than the rule." *Miss. Power & Light Co.*, 760 F.2d at 621.

Here, Herbert has no likelihood of success on the merits of her IDEA claim because D.H. is not a resident within the School Board's jurisdiction. Also, any injury to D.H. was caused by Herbert's actions in enrolling him in the wrong school district (*i.e.*, a district other than the one of her and D.H.'s residence) and failing to enroll him in the correct one after the School Board disenrolled him. Further, the balance of the harms and public interest both favor the School Board because it is not legally required to provide a FAPE to a student that does not reside within its jurisdictional boundaries, including the expenditure of public resources to do so.

## IV.    CONCLUSION

IT IS ORDERED that Herbert's preliminary injunction motion (R. Doc. 2) is DENIED.

New Orleans, Louisiana, this 16th day of June, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE