UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHIRAH HERBERT, individually and on
behalf of D.H., a minor child

VERSUS

ST. JAMES PARISH SCHOOL BOARD

CIVIL ACTION

NO. 25-758

SECTION M (4)

## <u>ORDER & REASONS</u>

Before the Court is a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure filed by defendant the St. James Parish School Board (the "School Board").[1]

Plaintiff Shirah Herbert, individually and on behalf of D.H., a minor child, responds in opposition,[2]

and the School Board replies in further support of its motion.[3]  Having considered the parties'

memoranda, the record, and the applicable law, the Court issues this Order & Reasons, granting

the motion because Herbert has not stated a claim upon which relief can be granted.

## I.    BACKGROUND

This case concerns a preschool-aged child, who is eligible for special education services,

but was enrolled in the school district of a parish in which he and his parents did not reside and

was disenrolled when the school discovered the residency issue.  The story begins in August 2024

when Herbert, who resides in St. John the Baptist Parish ("St. John"), decided to enroll her son

D.H. in school in neighboring St. James Parish ("St. James").  To accomplish the enrollment,

Herbert completed an application packet that referenced in some places her St. John address, but

---

[1] R. Doc. 26.
[2] R. Doc. 31.  Herbert moved for leave to file her opposition memorandum "out of time" because it was submitted about an hour past the midnight deadline.  R. Doc. 32.  The motion for leave is GRANTED.
[3] R. Doc. 34.

listed an address in St. James for D.H.[4]  Herbert stated that D.H. resided in St. James due to Herbert's "work arrangements."[5]  The application also required proof of residency for which Herbert, who did not own a home in St. James, provided a signed, sworn affidavit stating that both she and D.H. lived with someone named A.T. in St. James.[6]  Despite the address discrepancies, the School Board, relying solely on Herbert's sworn affidavit as proof of residency, enrolled D.H. in the pre-kindergarten program at Cypress Grove Montessori Academy ("CGMA").[7]

On October 22, 2024, CGMA identified D.H. as being eligible for special education services due to behavioral issues and developmental delays.[8]  While preparing for D.H.'s initial individualized education program ("IEP") meeting, the principal of CGMA became aware that D.H. might not live in St. James, as Herbert had represented in her sworn affidavit.[9]  The principal informed Amy Laiche, the School Board's chief of schools and student support, of this residency issue.[10]  At some point thereafter, Laiche, who was at CGMA for an unrelated matter, saw A.T. at the school and witnessed an impromptu interaction between A.T. and D.H.[11]  It was clear to Laiche that A.T. was familiar with D.H., so she asked A.T. about D.H.[12]  A.T. informed Laiche that D.H. went to her daycare the prior school year (2023-2024), but stated that he did not reside with her during the then-current school year (2024-2025).[13]  Laiche did not ask A.T. about the affidavit in Herbert's enrollment application packet because the meeting was "not planned" and "off the cuff,"

---

[4] R. Docs. 1-2, Testimony of Amy Laiche; 29 at 125-52 (School Board ex. 1).  Record Document 1-2 is the audio recording of the hearing to determine D.H.'s residence that was held before the state administrative law judge on January 16, 2025.  The exhibit referenced (*i.e.,* the application packet) was offered by the School Board at that hearing and is part of the administrative record.

[5] R. Doc. 29 at 139.

[6] R. Docs. 1-2, Testimony of Laiche; 29 at 138-39.

[7] R. Doc. 1-2, Testimony of Laiche.

[8] R. Doc. 1 at 1-2.

[9] R. Doc. 1-2, Testimony of Laiche.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

but Laiche saw it as an opportunity to confirm whether D.H. resided with A.T. in St. James.[14] Laiche also investigated D.H.'s residency by looking to see if Herbert owned property in another parish, and she found that Herbert owned property in St. John.[15]  Then Laiche spoke with the principal of CGMA and they agreed that Laiche would call Herbert to ask about her residency.[16] On November 1, 2024, Laiche called Herbert, and Herbert confirmed that she resided in St. John, but maintained that D.H. resided in St. James.[17]  Laiche explained to Herbert that the School Board's policy, which is grounded in Louisiana law, requires that both the parent and the student live within the geographical boundaries of St. James, and that, because Herbert lived in St. John, D.H. would be disenrolled from CGMA effective November 4, 2024.[18]  Laiche also explained to Herbert that D.H. should be enrolled in school in St. John, where Herbert resided.[19]  Also on November 1, 2024, Laiche sent an email to Herbert that memorialized their telephone conversation.[20]

On November 27, 2024, the Louisiana Department of Education received a written request for a due process hearing from Herbert's counsel, alleging that the School Board denied D.H. a free appropriate public education ("FAPE") by: "(1) failing to conduct a thorough investigation or provide [Herbert] with sufficient notice of her rights to appeal [the] School [Board's] residency determination that [D.H. was] not a resident in [the] School [Board's] geographical area; and (2) refusing and failing to convene an [IEP] team meeting or implement any services after finding [D.H.] eligible for special education services."[21]  Herbert also requested an independent

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*  Laiche explained further that the policy contained certain exceptions from this requirement but none applied to Herbert and D.H.'s case.  *Id.*
[19] *Id.*
[20] *Id.*; R. Doc. 29 at 154.
[21] R. Doc. 1-1 at 1.

educational evaluation ("IEE") at public expense and a stay-put order under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j).[22]

On December 6, 2024, Senecca Boudreaux, the School Board's director of special education, wrote to Herbert to respond to her request for a due process hearing.[23]  Boudreaux explained that, under the IDEA and Louisiana state law, a school district is not required to provide a FAPE to a student who does not reside within the district.[24]  She further explained that it would be futile for the School Board to conduct an IEP meeting when any resulting IEP would have to be reviewed and possibly changed when D.H. was enrolled in the correct school district, St. John.[25]  Boudreaux also confirmed to Herbert that the School Board remained willing to provide special education services to D.H. if she and he were to move to St. James and legitimately enroll in the district.[26]

On January 13, 2025, the state administrative law judge ("ALJ") issued the IDEA stay-put order, allowing D.H. to remain at CGMA during the pendency of the due process proceedings.[27]  The ALJ reasoned that, because no IEP was in place, CGMA could be considered D.H.'s "then-current educational placement."[28]  In the meantime, on December 12, 2024, the School Board had filed a preemptory exception of lack of subject-matter jurisdiction, arguing that it did not owe D.H. a FAPE because he did not meet the residency requirements.[29]  Herbert opposed the exception.[30]

---

[22] *Id.*
[23] R. Docs. 1-2, Testimony of Senecca Boudreaux; 29 at 160-63 (Boudreaux's letter).
[24] R. Doc. 29 at 160-63.
[25] *Id.*
[26] *Id.*
[27] R. Doc. 21-1.
[28] *Id.* at 2-4.
[29] R. Doc. 1-1 at 1.
[30] *Id.*

On January 16, 2025, the ALJ held an evidentiary hearing on the limited issue of D.H.'s residency.[31]  Laiche testified as to the series of events that led to D.H.'s enrollment and then his disenrollment after the School Board confirmed that he did not meet the residency requirements.[32]  Laiche also testified that the disenrollment, which occurred after she verified that Herbert resided in St. John, was in compliance with the School Board's policy.[33]  Further, Laiche stated that when she initially reviewed the entire enrollment application packet in August 2024, she did not notice the St. John address listed for Herbert, but instead relied solely on Herbert's sworn affidavit for proof of residency.[34]  Laiche did not know why the superintendent did not sign D.H.'s enrollment application packet.[35]  Further, regarding her later investigation of the residency question, Laiche indicated that she did not request more information from Herbert about residency because Herbert admitted to Laiche that she in fact lived in St. John, not St. James.[36]  Laiche confirmed that the School Board's residency policy applies to both disabled and non-disabled students.[37]

Kelly Cook, the School Board's chief of human resources and risk management, who is also an attorney, testified that D.H. was properly disenrolled according to the School Board's policy when it was confirmed with "actual proof" that Herbert resided in St. John.[38]  Cook stated that she learned about the residency issue in late fall 2024, probably around November.[39]  Cook testified that D.H. was initially admitted to CGMA due to a "clerical error" in that the School Board failed to catch the St. John address listed for Herbert in the enrollment application packet, but that a valid residency concern was triggered when the School Board gained actual knowledge

---

[31] R. Doc. 1-2.
[32] *Id.*, Testimony of Laiche.
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*, Testimony of Kelly Cook.
[39] *Id.*

that D.H. did not meet the School Board's residency requirements.[40]  Cook recalled that CGMA became aware of the residency issue when, in preparing for the initial IEP meeting, the IEP team requested D.H.'s medical records from his doctor, but the doctor's office refused to provide the records because the St. James address listed in CGMA's request did not match the St. John address the doctor's office had on file for D.H.[41]  Cook stated that the School Board does not have its own process to challenge a residency decision.[42]

Herbert testified that she answered the questions on the enrollment application packet truthfully – specifically, that she resided in St. John, while D.H. resided in St. James due to her work schedule.[43]  She also testified that she was married to D.H.'s father, D.H. was not in foster care, and neither she nor her husband had relinquished custody of D.H.[44]  At the time of D.H.'s disenrollment, Herbert resided in St. John.[45]

At the close of the administrative hearing, Herbert's attorney argued that, regardless of D.H. and Herbert's actual residency, D.H. should be deemed a resident of St. James because Herbert answered the questions on the enrollment application packet honestly and the School Board admitted him to CGMA, without the superintendent's signature, even though Herbert had disclosed an address in St. John.[46]  She reasoned that, once CGMA evaluated D.H. and determined that he was eligible for special education services, he was thereby qualified as a resident of the district and the School Board should have given Herbert an opportunity to cure any residency deficiencies before disenrolling D.H.[47]

---

[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*, Testimony of Shirah Herbert.
[44] *Id.*
[45] *Id.*
[46] *Id.*, Argument of Kimona Hogan.
[47] *Id.*

In opposition, the School Board's attorney argued that the district's evaluation of a student for special education services, the lack of parental ill intent, and clerical errors do not make that student a resident of the district – a prerequisite to the rights Herbert seeks to enforce.[48]  Instead, Louisiana law provides that a school district owes a FAPE to a student only when the student's parents reside within its geographical boundaries, and Herbert, admittedly, does not reside in St. James.[49]  Once the School Board had proof that Herbert resided outside of the district, D.H. was disenrolled in accordance with its policy and state law, a decision which had nothing to do with the determination that he was eligible for special education services.[50]  Further, argued the School Board, D.H. can receive special education services in St. John, where Herbert admits she resides.[51]

Just before closing the hearing, the ALJ stated that she could not rule on any other issues in the case until the residency issue was resolved, because it was the "driver of the case."[52]  On January 31, 2025, the ALJ issued an order on D.H.'s residency, finding that D.H. was not a resident of St. James, and thus the School Board did not owe him a FAPE.[53]  She cited the IDEA and Louisiana law, which both specify that a school district owes "a duty to provide a FAPE to every student with exceptionality residing within [its] geographical boundaries."[54]  And, noted the ALJ, "Louisiana [l]aw also provides that the residence of a student is the residen[ce] of the student's parent or parents."[55]  Herbert admitted upon the ALJ's questioning that she resided in St. John.[56]  Thus, D.H.'s residence for purposes of the IDEA was in St. John – meaning that St. John, not St.

---

[48] *Id.*, Argument of Wayne T. Stewart.
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.*, ALJ statement.
[53] R. Doc. 1-1.
[54] *Id.* at 3.
[55] *Id.*
[56] *Id.* at 4.

James (*i.e.*, the School Board), owed D.H. the duty to provide a FAPE.[57]  The ALJ considered "unpersuasive" Herbert's argument that D.H. should be deemed a resident of St. James simply because she did not try to mislead the district in completing the enrollment application packet and because the School Board did not catch the address discrepancy earlier.[58]  For these reasons, the ALJ granted the School Board's exception of lack of subject-matter jurisdiction, dismissed Herbert's request for a due process hearing, and terminated the adjudication of the matter.[59]

On April 17, 2025, Herbert filed a complaint in this Court under the IDEA, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), as amended, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12131-12134, seeking review of the ALJ's residency order, enforcement of the stay-put order, and implementation of an IEP for D.H.[60]  Herbert filed a motion for temporary restraining order ("TRO") and preliminary injunction to enforce the ALJ's stay-put order.[61]  This Court denied the TRO and set a briefing schedule and hearing date for the preliminary injunction motion.[62]  A preliminary injunction hearing was held on May 19, 2025.[63]  At the hearing, Herbert did not submit any additional evidence, choosing instead to rely on the administrative record and an affidavit she had filed with her preliminary injunction motion.[64]  The School Board submitted the district's school-year calendar as additional evidence, which shows that the last day of the regular school year was May

---

[57] *Id.*
[58] *Id.* at 4-5.
[59] *Id.* at 5.
[60] R. Doc. 1.
[61] R. Doc. 2.
[62] R. Doc. 5.
[63] R. Doc. 22.
[64] R. Docs. 29 (administrative record); 2-2 (affidavit).

22, 2025.[65]  On June 10, 2025, the parties filed a joint designated administrative record.[66]  Then,

on June 16, 2025, this Court issued its Order & Reasons denying Herbert's preliminary injunction

motion, finding that, because D.H. was not a resident of St. James, the School Board did not owe

him a FAPE or any other IDEA protections, including any attendant right to a stay-put order.[67]

The Court also held that Herbert could not satisfy the traditional preliminary injunction analysis.[68]

## II.    PENDING MOTION

The School Board moves to dismiss Herbert's complaint, arguing that she cannot state

claims under the IDEA, Section 504, or the ADA.[69]  As to the IDEA, the School Board asserts that

Herbert cannot show that the ALJ erred in any respect, including the dismissal of the case for lack

of jurisdiction, as the School Board did not owe D.H. a FAPE, or any other IDEA protections,

because he did not meet the residency requirements.[70]  The School Board contends that residency

is a threshold requirement that must be satisfied before any IDEA rights attach.[71]  With respect to

Herbert's Section 504 and ADA claims, the School Board argues that Herbert cannot state such

claims because she cannot show that D.H., who does not meet the residency requirements, was

"otherwise qualified" to receive educational services in St. James.[72]    Further, says the School

---

[65] R. Doc. 22-1 (calendar).  The School Board stated that it offers extended school year services, *i.e.*, summer school, to eligible students, but made no representations as to whether D.H. would qualify if he were enrolled at one of its schools.

[66] R. Doc. 29.

[67] R. Doc. 30.

[68] *Id.*

[69] R. Doc. 26.

[70] R. Doc. 26-1 at 4-12.  The School Board also argues that D.H. was not entitled to a stay-put order because he did not have a "then-current educational placement," as no IEP was adopted for him.  *Id.* at 4-8.  Herbert contends that CGMA constituted an educational placement for IDEA purposes.  R. Doc. 31 at 14-15.  The Court need not address this argument because it has already found that D.H. was not a resident of St. James, and thus, the School Board did not owe him a FAPE or any other IDEA protections.  *See* R. Doc. 30.

[71] R. Doc. 26-1 at 10-12.  The School Board also responds to Herbert's argument that the ALJ did not properly assign the burden of proof at the residency hearing.  *Id.* at 12-14.  In opposition, Herbert contends that the ALJ's failure to state or apply the appropriate burden of proof resulted in reversible error.  R. Doc. 31 at 15.  This issue, though, is irrelevant to whether Herbert stated any viable claim under the IDEA, Section 504, or the ADA.

[72] R. Doc. 26-1 at 14-17.

Board, it did not discriminate against D.H. due to his disability, but removed him from CGMA because he was not a resident of the parish.[73]

In opposition, Herbert argues that she has stated IDEA, Section 504, and ADA claims because the School Board's actions of accepting D.H. for enrollment, conducting an evaluation, and determining his eligibility for special education services, "created" IDEA, Section 504, and ADA obligations on the part of the School Board, and then the School Board improperly used D.H.'s lack of residency to deny him those protections.[74] Herbert contends that, at enrollment, the School Board deliberately ignored issues with D.H.'s enrollment packet, which in her view, created IDEA obligations that the School Board later attempted to avoid by selectively invoking the residency requirement.[75] She further argues that residency is a factual dispute, not a jurisdictional defect.[76] Also, says Herbert, the timing of D.H.'s disenrollment supplies an inference of discrimination for purposes of Section 504 and the ADA and the lack of residency cannot suffice to deny him protections under those laws.[77] Finally, Herbert asserts that her claim for compensatory education is not ripe for dismissal because it requires discovery concerning matters other than residency.[78]

The School Board replies, reiterating that residency is a threshold requirement for the IDEA and other claims Herbert attempts to assert.[79] Thus, it maintains that Herbert cannot prevail under Section 504 or the ADA because D.H., a nonresident, was not qualified to receive educational services in the district.[80] The School Board also argues that Herbert does not cite any

---

[73] *Id.* at 16-17.
[74] R. Doc. 31 at 2-9.
[75] *Id.* at 11-12.
[76] *Id.* at 3-5, 12-13.
[77] *Id.* at 7-11.
[78] *Id.* at 15-16.
[79] R. Doc. 34 at 1-10.
[80] *Id.* at 7-8.

legal authority, or misstates the limited cited authority, for most of the propositions she articulates in her opposition.[81]

## III.    ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).   A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted

---

[81] *Id.* at 1-2.

unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th

Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## B. IDEA Claims

In her complaint, Herbert purports to state IDEA claims seeking review of the ALJ's order dismissing the case for lack of jurisdiction, *i.e.*, the residency ruling, and the consequences that flowed from that ruling, namely, that once the case was dismissed, the ALJ failed to continue to enforce the stay-put order; failed to find that the School Board did not timely develop and implement an IEP for D.H., which denied him a FAPE; failed to address the School Board's procedural violations in not permitting Herbert to challenge the residency determination or consider her request for an IEE; and failed to properly apply the burden of proof.[82] Thus, all of Herbert's IDEA claims hinge on the residency determination. And, in ruling on Herbert's preliminary injunction motion, this Court has already found that D.H. was not a resident of St. James, and consequently, the School Board did not owe him a FAPE or any IDEA protections.[83] To reach this conclusion, the Court reviewed the administrative record and other limited evidence presented by the parties (nearly all of which was referenced in Herbert's complaint).[84] Notably, Herbert did not submit any evidence to dispute that D.H. was not in fact a resident of St. James. Instead, she argued, as she does here, that D.H. should be deemed a resident of St. James because

---

[82] R. Doc. 1 at 16-30.
[83] R. Doc. 30 at 10-16.
[84] *Id.*

he was admitted to CGMA and identified as eligible for special education.  As the Court previously explained, residency as defined under state law, not enrollment, is the threshold requirement for IDEA protections, and D.H. was not a resident of St. James, but rather St. John.[85]  Thus, the School Board did not owe D.H. a FAPE or any other IDEA protections, and Herbert cannot state an IDEA claim against the School Board.

### C.  Section 504 and ADA Claims

Herbert alleges in her complaint that the School Board violated Section 504 and the ADA by denying D.H., a student with a disability, meaningful access to an education by using residency as an excuse to disenroll him from CGMA.[86]  Section 504 and the ADA "prohibit discrimination on the basis of disability in a wide variety of contexts," including public schools.  *A.J.T. by & through A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. ---, 145 S. Ct. 1647, 1652 (2025).  Section 504 provides in relevant part: "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  Similarly, under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "Both Section 504 and Title II authorize individuals to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages."  *A.J.T.*, 145 S. Ct. at 1652 (quotation omitted).

To state a claim under Section 504 or the ADA in the context of a student's exclusion from an educational program, a plaintiff must plausibly allege that: "'(1) []he has a disability; (2) []he

---

[85] *Id.*
[86] R. Doc. 1 at 30-33.

is otherwise qualified to participate in the defendant's program; and (3) []he was excluded from the program on the basis of [his] disability.'" *Salamah v. UT Sw. Med. Ctr.*, 2025 WL 1211124, at *8 (N.D. Tex. Apr. 25, 2025) (alteration omitted) (quoting *Maples v. Univ. of Tex. Med. Branch at Galveston*, 901 F. Supp. 2d 874, 879 (S.D. Tex. 2012), *aff'd*, 524 F. App'x 93 (5th Cir. 2013); and citing *Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 219 (5th Cir. 2018); *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002)). The two statutes differ only in the application of the last element. *Maples*, 901 F. Supp. 2d at 879. Under Section 504, a defendant is prohibited from excluding an otherwise qualified individual "solely" by reason of a disability, whereas the ADA more broadly prohibits exclusion "by reason of such disability." *Id.* "Thus, while [S]ection 504 establishes a 'sole cause' test for causation, the ADA instead establishes a 'motivating factor' test." *Id.* (citations omitted).

At the heart of both statutes, then, is that the plaintiff must be "otherwise qualified" to receive the services that he or she is purportedly being denied.[87] To be "otherwise qualified" for a program of services, "an individual with a disability must satisfy the program's 'essential' requirements, with or without the aid of reasonable accommodations. A requirement is 'essential' if the nature of the program would be fundamentally altered without it." *Salamah*, 2025 WL 1211124, at *8 (quoting *Shaikh*, 739 F. App'x at 220).

Here, D.H. is not "otherwise qualified" to receive any educational services from the School Board because he is not a resident of St. James. Residency is a threshold requirement for enrollment in public school. Louisiana law provides that state and local education authorities must provide "a free appropriate public education in the least restrictive environment to every student with an exceptionality, ages three through twenty-one, *who is a resident therein*." La. R.S. 17:1941

---

[87] The School Board does not dispute that D.H. has a disability. R. Doc. 26-1 at 15.

(emphasis added).  And a student's residency is determined by the parish in which his or her parent or parents have their legal residence, unless they have relinquished custody of the student or some other limited exceptions (*viz.*, divorce, foster care) apply.  *Id.* 17:1942(B)(3).  This Court has already found that Herbert, and consequently D.H., were not residents of St. James, but rather St. John.[88]  Because D.H. was not qualified to receive educational services from the School Board, Herbert cannot state Section 504 and ADA claims against it.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the School Board's Rule 12(b)(6) motion to dismiss (R. Doc. 26) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 8th day of July, 2025.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[88] *See* R. Doc. 30.